IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-165-D

WILLIAM MATTHEW TILGHMAN,       )
                                )
            Plaintiff,          )
                                )
       v.                       )        **ORDER**
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security, )
                                )
            Defendant.          )

On October 27, 2011, William Matthew Tilghman ("Tilghman") sued Michael J. Astrue, Commissioner of Social Security ("Commissioner"), alleging that the Commissioner wrongfully denied Tilghman's application for Social Security disability benefits [D.E. 6].[1] Tilghman asks the court to reverse the Commissioner's denial of benefits and remand the case for further proceedings. Id. On April 9, 2012, Tilghman moved for judgment on the pleadings [D.E. 24] and filed a memorandum in support [D.E. 25]. On June 20, 2012, the Commissioner moved for judgment on the pleadings [D.E. 28] and filed a memorandum in support [D.E. 29]. On July 5, 2012, Tilghman responded in opposition [D.E. 30]. As explained below, Tilghman's motion for judgment on the pleadings is granted, defendant's motion is denied, and the case is remanded for further proceedings.

I.

On March 12, 2009, Tilghman applied for benefits. Tr. 126. In his application, Tilghman stated that his disability began on February 3, 2009. Id. His claim was denied initially on May 8, 2009, id. 56, and again on reconsideration on October 15, 2009. Id. 58. Tilghman requested a

---

[1] Astrue has resigned. Carolyn W. Colvin is Acting Commissioner and is substituted as defendant. See Fed. R. Civ. P. 25(d).

hearing before an Administrative Law Judge ("ALJ"), which took place on February 1, 2011. See id. 27–55.

At the hearing, Tilghman testified that he had been disabled since February 2009, largely due to his ankylosing spondylitis. See id. 34–35. Ankylosing spondylitis involves inflammation and swelling of the joints between the spinal bones. Tilghman testified that he suffered from recurring pain that left him unable to sit for more than ten minutes or stand for more than five minutes. See Tr. 37–38. He also described suffering from osteoarthritis, degenerative disc disease, and right rotator cuff problems. Id. 39, 41. A vocational expert testified that, based on hypothetical residual functional capacities ("RFC") posed by the ALJ, Tilghman could not perform his past relevant work. See id. 49. But the vocational expert testified that there were unskilled positions available in the national and North Carolina economies for someone with Tilghman's characteristics. See id. 49–52.

On March 2, 2011, the ALJ issued a written decision. In the decision, the ALJ performed the prescribed five-step process to evaluate disability claims. See 20 C.F.R. § 404.1520(a)(4); see also Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). The ALJ found that Tilghman (1) had not engaged in substantial gainful activity since February 3, 2009, Tr. 13; (2) suffered from the severe impairments of ankylosing spondylitis, osteoarthritis in the knees, degenerative disc disease, and right rotator cuff tendinitis, id. 14; (3) did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in" the regulations, id. 16; (4) possessed "the [RFC] to perform light work" with numerous "postural limitations," which precluded returning to his past relevant work as a blind installer and door hanger, id. 17, 21; and (5), based on his RFC, could perform other work that "exist[s] in significant numbers in the national economy," id. 21–22. Accordingly, the ALJ denied Tilghman's application. Id. 22. Tilghman timely requested review by the Appeals Council. See id. 7. On August 5, 2011, the

2

Appeals Council denied his request. See id. 1–4. Tilghman timely sought judicial review. See 42 U.S.C. § 405(g).

II.

A district court reviewing the Commissioner's denial of benefits considers only whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. See 42 U.S.C. § 405(g); Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is evidence that "a reasonable mind might accept as sufficient to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Under the so-called treating physician rule, the Commissioner generally "accord[s] greater weight to the testimony of a treating physician." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam); see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(c). However, a treating physician's opinion is entitled to "controlling weight" only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

3

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see Mastro, 270 F.3d at 178; SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the treating physician's opinion does not merit controlling weight, the ALJ has discretion about how much weight to afford the opinion. See Mastro, 270 F.3d at 178.

Both parties agree that Dr. Kevin McKnight, Tilghman's rheumatologist since 2005, is Tilghman's treating physician. The parties dispute whether the ALJ accorded proper weight to Dr. McKnight's opinion.

Initially, Tilghman argues that the ALJ's failure to explicitly state what weight he gave Dr. McKnight's opinion alone justifies remand. See Pl.'s Mem. Supp. Mot. J. 7. Under the regulations, the ALJ must provide "good reasons" for the weight accorded to a treating physician's opinion. See 20 C.F.R. § 404.1527(c)(2); Craig, 76 F.3d at 590; accord Roddy v. Astrue, 705 F.3d 631, 636–37 (7th Cir. 2013); Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

Although the ALJ did not explicitly state the weight that he gave Dr. McKnight's opinion, see Tr. 20, the ALJ's discussion makes clear that it was substantially less than controlling weight. Thus, the ALJ's discussion of Dr. McKnight's opinion was sufficiently detailed so as not to provide an independent basis for remand. See, e.g., Hutchinson v. Astrue, No. 1:09CV57, 2012 WL 1267887, at *4–5 (M.D.N.C. Apr. 16, 2012) (unpublished).

Turning to the ALJ's analysis of Dr. McKnight's opinion, the ALJ provided three main reasons for discounting Dr. McKnight's opinion. First, the ALJ stated that Dr. McKnight's February 3, 2009 treatment note in which Dr. McKnight first recommended that Tilghman file for disability "appeared to be based more on the claimant's need for health insurance and financial assistance rather than inability to work." Tr. 20. Dr. McKnight specifically noted his concern for Tilghman's

4

lack of health insurance and income to support himself and his family. See id. 310–11. The ALJ acknowledged, however, that Dr. McKnight's same treatment note commented on Tilghman's difficulty with basic life activities. See id. 20. Second, the ALJ addressed Dr. McKnight's February 9, 2011 letter, in which Dr. McKnight opined that Tilghman's "chronic ankylosing spondylitis" caused Tilghman "crippling and chronic pain" and thus made him permanently disabled. See Tr. 434. Third, the ALJ concluded that Dr. McKnight's opinion about the severity of Tilghman's medical condition was "inconsistent with the record and his treatment notes." Tr. 20. Specifically, the ALJ cited Tilghman's "infrequent rheumatology appointments," the absence of signs of crippling and chronic pain in Dr. McKnight's records, and Tilghman's activity level. See id. The court analyzes each reason seriatim.

First, in analyzing a treating physician's opinion, an ALJ is not permitted to "make speculative inferences from medical reports" and may reject the opinion only based on "contradictory medical evidence and not due to [the ALJ's] own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quotations omitted); Bryan v. Astrue, Civil No. 1:10cv028, 2011 WL 4368374, at *8 (W.D.N.C. Sept. 19, 2011) (unpublished). Here, the ALJ speculated that Dr. McKnight's treatment note revealed Dr. McKnight's improper motives for supporting Tilghman's disability claim. Specifically, the ALJ interpreted Dr. McKnight's reference to Tilghman's need for health insurance and income to be the tail wagging the dog in Dr. McKnight's support of his disability claim. But it is equally plausible that after independently determining that Tilghman's physical condition was severe enough to merit seeking disability, Dr. McKnight benignly noted that Tilghman, who he believed unable to work, would need some sort of health insurance and income. On this record, absent citation to any other evidence to the contrary, the ALJ improperly discounted Dr. McKnight's opinion based on speculation about Dr. McKnight's

5

alleged motive. See Morales, 225 F.3d at 317; Irwin v. Astrue, No. CV-10-545-HZ, 2011 WL 2619503, at *9 (D. Or. July 1, 2011) (unpublished).

Second, the ALJ correctly noted that Dr. McKnight's legal opinion that Tilghman was totally disabled and unable to work did not qualify for special weight because it addressed issues reserved to the Commissioner. See Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 492–93 (6th Cir. 2010) (unpublished); Morgan v. Barnhart, 142 F. App'x 716, 721–22 (4th Cir. 2005) (unpublished); 20 C.F.R. § 404.1527(d); see also Tr. 20. Thus, the ALJ's second reason provides no basis to remand.

Third, the ALJ rejected Dr. McKnight's opinion about the severity of Tilghman's condition and cited infrequent medical appointments, absence of signs of crippling pain, and Tilghman's activity level. As for the frequency of Tilghman's medical appointments, the ALJ said that Tilghman only had four rheumatology appointments between August 2009 and July 2010, suggesting Tilghman's ankylosing spondylitis might not be disabling. See id. 19–20. However, the ALJ should have considered appointments from February 2009, when Dr. McKnight opined that Tilghman's condition was serious enough to apply for disability, through December 2010. Notably, the records show that Tilghman saw two other doctors during that period for help with pain when Dr. McKnight was unavailable. See Tr. 302–04, 404. Thus, Tilghman had eight medical appointments (six with Dr. McKnight) between February 2009 and December 2010. Furthermore, the ALJ provided no basis for opining that Tilghman should have seen a doctor more often if he was disabled. Rather, Dr. McKnight's treatment notes show that Tilghman's appointments occurred at intervals that Dr. McKnight prescribed. See Tr. 311 (February 2009 visit with follow up in four to six months); id. 397 (August 2009 visit with follow up in three months); id. 396 (December 2009 visit with follow up in three and a half months); id. 395 (April 2010 visit); id. 394 (July 2010 visit with follow up in three months); id. 393 (December 2010 visit with follow up in two to three months). Because the

6

visits occurred as Dr. McKnight prescribed, the ALJ should have identified some medical or other evidence suggesting that this frequency of in-office visits belies the severity of Tilghman's condition.

As for signs of pain in Dr. McKnight's treatment records, the ALJ stated that records showed Tilghman's "pain was subsequently controlled or stabilized with medication." Tr. 19; cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The court acknowledges that Dr. McKnight's treatment notes are sparse concerning pain control. The records do reflect, however, that Dr. McKnight prescribed Tilghman a cocktail of "high risk meds" and this course of treatment was maintained through 2009 and 2010. Tr. 395; see id. 434. The medication included Enbrel, Percocet, and Indocin. Id. 434.

In discounting Dr. McKnight's opinion about the severity of Tilghman's condition, the ALJ noted Tilghman's activity level. Specifically, the ALJ noted that Tilghman testified that he performed maintenance work part-time at his church for a couple hours at a time. He helped with cooking at home and went shopping on good days. He also attended church twice per week, attended his children's activities, and went to lunch with friends. See id. 19.

As mentioned, the ALJ must give good reasons that are supported by the record for the weight accorded to Dr. McKnight's opinion and the reasons must be sufficiently specific to enable reviewers to understand the weight given and the reasons for that weight. See SSR 96-2p, 1996 WL 374188, at *5; Roddy, 705 F.3d at 636–37; Anderson, 696 F.3d at 793; Halloran, 362 F.3d at 33; Craig, 76 F.3d at 590. Here, the ALJ improperly speculated about Dr. McKnight's motives for supporting Tilghman's disability claim. Such speculation is not a basis for discounting Dr. McKnight's opinion. In addition, substantial evidence does not support the ALJ's conclusion that

7

Tilghman's treatment was "infrequent." On the other hand, substantial evidence might support the ALJ's conclusion about pain control and the ALJ's opinion about Tilghman's activity level. Similarly, the ALJ correctly gave no weight to Dr. McKnight's legal conclusions about disability.

On this record, the court declines to speculate whether the ALJ's improper consideration of certain factors tipped the balance in analyzing Dr. McKnight's opinion. Given the importance of properly analyzing a treating physician's opinion, the court remands for reconsideration of Dr. McKnight's opinion. In doing so, the court expresses no opinion on the ultimate outcome. On remand, the ALJ also may consider the supplemental evidence presented to the Appeals Council.

Because the case is being remanded, the court briefly addresses one other argument. Tilghman argues that the ALJ erred by "shield[ing] himself by giving weight to the state records reviewers" when rejecting Dr. McKnight's opinion as treating physician. Pl.'s Mem. Supp. Mot. J. 9. However, it is clear from the ALJ's opinion that the ALJ addressed the state agency consultants' opinions only after deciding not to give Dr. McKnight's opinion controlling weight. See Tr. 20. Thus, Tilghman's argument fails.

### III.

In sum, the court GRANTS Tilghman's motion for judgment on the pleadings [D.E. 24], DENIES the Commissioner's motion for judgment on the pleadings [D.E. 28], and REMANDS the case pursuant to sentence four of 42 U.S.C. § 405(g) for proper consideration of Dr. McKnight's opinion.

SO ORDERED. This 19 day of March 2013.

JAMES C. DEVER III
Chief United States District Judge